IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SECRETARY OF HOUSING AND URBAN DEVELOPMENT** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  26-418** |
| | : | |
| **LINDA ROBINSON** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                    **June 1, 2026**

In federal court, every day is a school day.  In a first for us, we consider a reverse

mortgage for a residential property held by the Secretary of the United States Department of

Housing and Urban Development (HUD).  The mortgagors passed away, and HUD sought to

foreclose on the property.  But rather than following the typical foreclosure procedure in

Pennsylvania, HUD scheduled the property for a nonjudicial (*i.e.*, non-sheriff's) sale pursuant to

the Single Family Mortgage Foreclosure Act of 1994 — known as the SFMFA.  HUD

purportedly bought the property at this nonjudicial sale in October 2024 and is now trying to

eject Linda Robinson — the mortgagors' daughter and the heiress to the property — who is

living there.  Ms. Robinson challenges HUD's claim to the property, asserting that HUD engaged

in bad-faith conduct; she brings a counterclaim against HUD to quiet title and raises the

affirmative defenses of equitable estoppel and unclean hands.  HUD insists that this counterclaim

and these affirmative defenses are statutorily barred by the SFMFA and thus moves for dismissal

and judgment in its favor.  As explained below, we disagree.  Ms. Robinson may try to defeat

HUD's ejectment action.

## I.      FACTUAL BACKGROUND

On July 25, 2011, a reverse mortgage (the Mortgage) for a residential property (the

Property) was executed and recorded in Philadelphia County between Andrew Taylor (the Mortgagor) and Mortgage Electronic Registration Systems, Inc. (the Mortgagee) acting as nominee for Generation Mortgage Company.  DI 1 at ¶¶ 4-5; DI 7 at ¶ 17.  In 2017, ownership of the Mortgage loan was assigned to the Secretary of HUD.  DI 7 at ¶ 18.  Mr. Taylor died on October 20, 2022, resulting in a default on the Mortgage.  DI 7 at ¶¶ 19, 22.  Mr. Taylor was survived by his daughter, Linda Robinson, who was named in his will as the executor of his estate and was gifted the Property and its contents.  *Id.* at ¶ 20.

Around December 2022, HUD engaged its servicing agent, Compu-Link Corporation (Compu-Link) to collect on the loan.  *Id.* at ¶ 23.  Compu-Link did not send monthly statements nor any correspondence addressed to Mr. Taylor, his estate, or his heirs until March 2024.  *Id.* at ¶ 24.  On March 13, 2024, Compu-Link, on HUD's behalf, sent to the Property via certified mail a "Notice of Intent to Foreclose and Accelerate Mortgage Balance" (the Pre-Foreclosure Notice), which (i) claimed that the Mortgage was in default because Mr. Taylor died and (ii) declared that his estate could cure the default within thirty days by paying $238,342.01.  *Id.* at ¶ 25.  The Pre-Foreclosure Notice specifically stated:

> If you do not cure the default within 30 days, we intend to exercise our right to accelerate the mortgage payments [. . .] If full payment of the amount of default is not made within THIRTY (30) DAYS, we also intend to instruct our attorneys to start a lawsuit to foreclose your mortgaged property.  If the mortgage is foreclosed, your mortgaged property will be sold by the Sheriff to pay off the mortgage debt.
>
> We may also sue you personally for the unpaid balance and all other sums due under the mortgage.
>
> If you have not cured the default within the thirty-day period and foreclosure proceedings have begun, you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's foreclosure sale.

*Id.* (citation modified) (citing DI 7-1).

In an effort to pay off the loan and prevent foreclosure, Ms. Robinson paid to admit Mr. Taylor's will to probate court and procure testamentary letters for his estate; she also met with an attorney, who advised that if she sought to remain in the Property, HUD would have to hire a lawyer and file a foreclosure complaint. *Id.* at ¶¶ 33-35. Then, in April 2024, Ms. Robinson and her son engaged a mortgage advisor to help them qualify for financing to pay off the loan and paid $500 for an appraisal of the Property. *Id.* at ¶¶ 41-42.

On July 24, 2025, HUD's counsel (KML Law Group, PC) sent a notice to "Linda Wright" and "Unknown Heirs of Andrew J. Taylor, deceased" stating that its client asked it "to review this matter and commence legal action to recover the property via a foreclosure unless other arrangements are made[,]" that it "may have already commenced foreclosure[,]" and that it "reviewed the court records and no will has been presented for probate nor estate raised." *Id.* at ¶ 44. HUD scheduled the Property for a nonjudicial sale pursuant to the SFMFA. *Id.* at ¶ 46. On July 31, 2024, HUD's counsel recorded a "NOTICE OF DEFAULT AND FORECLOSURE SALE" (Sale Notice) and mailed a copy to the Property, which Ms. Robinson received in August 2024. *Id.* at ¶¶ 47-48. No sheriff sale of the Property ever occurred; rather, HUD alleges that it purchased the Property on September 17, 2024, at a nonjudicial, SFMFA foreclosure sale, during which HUD's counsel acted as the foreclosure commissioner. *Id.* at ¶¶ 50-51.

HUD's counsel then executed a deed to HUD on October 14, 2024, which was recorded in Philadelphia on October 22, 2024. *Id.* at ¶ 52. In an attempt to purchase the Property from HUD, Ms. Robinson's son qualified for a $190,000 loan and obtained a mortgage preapproval

notice. *Id.* at ¶ 56. Ms. Robinson then secured counsel through Community Legal Services (CLS), who presented an offer to HUD's counsel to purchase the Property for $200,000 accompanied by the mortgage preapproval notice. *Id.* at ¶ 57. HUD has not agreed to sell the Property back to Ms. Robinson's family, despite the continued willingness of Ms. Robinson and her family to purchase the home from HUD. *Id.* at ¶¶ 58-59.

On January 19, 2025, HUD filed an ejectment action against Ms. Robinson in the Philadelphia County Court of Common Pleas, to which Ms. Robinson filed an answer with defenses of estoppel, unclean hands, and equity. *Id.* at ¶¶ 60-61; *Secretary of Housing and Urban Development v. Robinson et al.*, No. 250101805 (Phila. Ct. Comm. Pl. 2025). Following various rulings, on January 15, 2026, HUD discontinued the ejectment action in state court and filed the instant ejectment case before us. *Id.* at ¶¶ 62-68.

In response to HUD's ejectment action, Ms. Robinson raises two affirmative defenses and asserts a counterclaim to quiet title. Her first affirmative defense, equitable estoppel, asserts that Compu-Link and HUD's counsel made misrepresentations in its Pre-Foreclosure Notice upon which Ms. Robinson relied to her detriment — namely, that it was going to accelerate the loan, file for foreclosure, and bring the Property to sheriff sale, which would give her a chance to cure the default and save her home. *Id.* at ¶¶ 69-73. Her second affirmative defense asserts unclean hands: she avers that HUD (1) failed to inform her that she could request a HUD-certified appraisal and pay off the loan for 95% of the property's appraised value and instead demanded payment of the full loan amount (which exceed $238,000) — an amount which far exceeded the Property's value at the time; (2) led her to believe that it would follow the regular foreclosure procedures, rather than the expedited nonjudicial sale procedure; and (3) engaged in

4

forum shopping.  *Id.* at ¶¶ 76-84.  Ms. Robinson also asserts a counterclaim for quiet title to the Property pursuant to the federal Quiet Title Act, 28 U.S.C. § 2409a, seeking a declaration that she, rather than HUD, is the rightful owner of the Property.  *Id.* at ¶ 85.  She argues that HUD is not a "bona fide purchaser" of the Property under 12 U.S.C. § 3752(1) — and therefore not the Property's owner by means of the deed executed on October 14, 2022, and recorded on October 22, 2024 — because HUD did not (1) provide any value in exchange for the Property; or (2) purchase the Property "in good faith" given that it misled her into believing it would follow the regular foreclosure procedures and that she would have to pay more than the fair market value of the Property to cure the default.  *Id.* at ¶¶ 97-98.  Thus, Ms. Robinson insists that the recorded deed to HUD should be voided, such that title to the Property should be restored to her.  *Id.* at ¶ 99.

## II.    MOTIONS AT ISSUE

HUD moves to dismiss Ms. Robinson's counterclaim and defenses under Fed. R. Civ. P. 12(b)(6) and to obtain judgment as a matter of law under Fed. R. Civ. P. 12(c).  DI 9 at 1.  It asserts that Ms. Robinson does not plausibly allege a valid basis to defeat HUD's title because both the counterclaim and defenses are statutorily barred under 12 U.S.C. § 3751 *et seq*.  *Id.* at 1-2.  HUD argues that the SFMFA bars Ms. Robinson's claims because she was served with the Pre-Foreclosure Notice and HUD was a bona fide purchaser under the SFMFA.  *Id.* at 4.  Because HUD was a bona fide purchaser, HUD insists that § 3765(1) bars her counterclaim.  *Id.*  Nor, HUD maintains, can Ms. Robinson use the ejectment action "as a vehicle to relitigate all the issues that [she] is barred from [raising] after a SFMFA non-judicial foreclosure."  *Id.* at 5 (citation omitted).  Again, because HUD contends that it is the Property's purchaser, it argues

that it is entitled to possess the Property and that Ms. Robinson cannot seek to challenge such possession due to SFMFA's bar.  *Id.* at 5-6.

Ms. Robinson insists that neither her counterclaim nor her affirmative defenses are barred by the SFMFA.  DI 14 at 10-18.  Regarding her counterclaim to quiet title, she argues that § 3765 of the SFMFA does not bar her counterclaim because § 3765 applies only if there is a bona fide purchaser as defined by the SFMFA, and here HUD was not a bona fide purchaser.  *Id.* at 11-13.  Arguing that the presumption of bona fide purchaser status under § 3763(d) is rebuttable, Ms. Robinson contends that she has rebutted this presumption by alleging that HUD neither transferred value in exchange for the Property nor purchased it "in good faith."  *Id.* at 11-12.  She thus reasons that if HUD was not a bona fide purchaser at the nonjudicial sale held on September 17, 2024, then § 3765's claims bar does not apply to her counterclaim to quiet title. *Id.* at 12.  As for her affirmative defenses, Ms. Robinson argues that these defenses could defeat HUD's right to judgment regarding its ejectment claim.  *Id.* at 13, 17-18.  She further reasons that the SFMFA does not bar her affirmative defenses because § 3765 bars "claims" not "affirmative defenses" and these two concepts are distinct, as evidenced by Black's Law Dictionary and Fed. R. Civ. P. 8.  *Id.* at 13-14.  Finally, Ms. Robinson contends that applying § 3765 to bar her counterclaim and affirmative defenses would violate the Fifth Amendment of the U.S. Constitution, due to HUD's alleged misrepresentations in its Pre-Foreclosure Notices. *Id.* at 18-19.  In her view, preventing her from raising any defenses to this ejectment action would deprive her of an opportunity to be heard on a matter that would deprive her of housing. *Id.* at 19.

## III.    LEGAL STANDARDS

**A.      Rule 12(b)(6) challenges**

A party may seek to dismiss an action against it by asserting that the complaint failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, we must only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation omitted).  We also shall "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."  *Id.* (citation omitted).  To survive dismissal, a plaintiff's complaint must state a "plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Whether the complaint meets this plausibility standard is a context-specific inquiry which requires us to use our common sense and judicial experience.  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief."  *Id*. (citation modified) (citation omitted).

**B.      Rule 12(c) motions**

Under Rule 12(c), a party may move for judgment on the pleadings after the close of pleadings but sufficiently early so as not to delay trial.  Fed. R. Civ. P. 12(c).  The standard of review for a Rule 12(c) motion is the same as that used for a Rule 12(b)(6) motion.  *Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 573-74 (3d Cir. 2024).  We must accept as true the non-movant's well-pleaded allegations and draw all inferences in their favor.  *Id.* at 574 (citations omitted).  Only the complaint, exhibits attached thereto, matters of public record,

and undisputedly authentic records (if such records provide the basis for the complainant's claims) may be considered. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted). And we may not grant a motion for judgment on the pleadings "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (citation omitted).

### C.     Single Family Mortgage Foreclosure Act (SFMFA)

The Single Family Mortgage Foreclosure Act of 1994 is codified at 12 U.S.C. § 3751 *et seq*. Its stated purpose "is to create a uniform Federal foreclosure remedy for single family mortgages" that are either held by the Secretary of HUD pursuant to Titles I or II of the National Housing Act or that secure loans obligated by the Secretary under 42 U.S.C. § 1452b. 12 U.S.C. § 3751(b). Section 3760(e) of the statute states that "[a]ny foreclosure sale held in accordance with this chapter shall be conclusively presumed to have been conducted in a legal, fair, and reasonable manner[]" and that "[t]he sale price shall be conclusively presumed to be reasonable and equal to the fair market value of the property." 12 U.S.C. § 3760(e). Section 3763(a) governs the "[t]ransfer of title and possession" and states, in pertinent part, that "[n]otwithstanding any State law to the contrary, delivery of a deed by the foreclosure commissioner shall be a conveyance of the property, and constitute passage of title to the mortgaged property, and no judicial proceedings shall be required ancillary or supplementary to the procedures provided in this chapter to assure the validity of the conveyance or confirmation of such conveyance." 12 U.S.C. § 3763(a). Under 3763(b), "[a] purchaser at a foreclosure sale held pursuant to this chapter shall be entitled to possession upon passage of title under subsection (a) to the mortgaged property, subject to any interest or interests not barred under section 3765 of

8

this title[]" and "[a]ny person remaining in possession of the mortgaged property after the passage of title shall be deemed a tenant at sufferance subject to eviction under local law." 12 U.S.C. § 3763(b). Section 3763(e)(1) states that "[t]here shall be no right of redemption, or right of possession based upon a right of redemption, in the mortgagor or others subsequent to a foreclosure completed pursuant to this chapter." 12 U.S.C. § 3763(e)(1).

The "[e]ffect of sale" is governed by § 3765, which states that "[a] sale, made and conducted as prescribed in this chapter to a bona fide purchaser, shall bar all claims upon, or with respect to, the property sold . . . [.]" 12 U.S.C. § 3765(a)(1). The term "bona fide purchaser" is defined under § 3752(1) as "a purchaser for value in good faith and without notice of any adverse claim, and who acquires the security property free of any adverse claim." 12 U.S.C. § 3752(1). And § 3763(d) states that "[t]he purchaser of property under this chapter shall be presumed to be a bona fide purchaser." 12 U.S.C. § 3763(d).

## D.    Federal Quiet Title Act

Under the federal Quiet Title Act, the United States may be named as a party defendant in a civil case brought under 28 U.S.C. § 2409a "to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). In bringing an action under this statute, the complaint must "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d). A civil action brought against the United States under this statute must be tried via bench trial. 28 U.S.C. § 2409a(f).

## IV.    DISCUSSION

**A.      We deny HUD's motion to dismiss because § 3765 bars neither Ms. Robinson's counterclaim nor her affirmative defenses**

Ms. Robinson's quiet title counterclaim, and her equitable estoppel and unclean hands affirmative defenses, are not barred by 12 U.S.C. § 3765.  As we must, we first examine § 3765's text.  *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (explaining that we shall begin "with the statutory text and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.") (citation modified) (citation omitted).  Section 3765 states: "A sale, made and conducted as prescribed in this chapter to a bona fide purchaser, shall bar all claims upon, or with respect to, the property sold" with respect to certain persons.  12 U.S.C. § 3765.  12 U.S.C. § 3752(1) defines "bona fide purchaser" as "a purchaser for value in good faith and without notice of any adverse claim, and who acquires the security property free of any adverse claim."  *Id.*  This definition controls the meaning of "bona fide purchaser."  *See Burgess v. United States*, 553 U.S. 124, 129-30 (2008) (explaining that we must follow statutory definitions) (citations omitted); *Meese v. Keene*, 481 U.S. 465, 484 (1987).

Taken together, § 3765 bars all claims respecting or upon property sold pursuant to the SFMFA, to a bona fide purchaser, where a bona fide purchaser is (1) "a purchaser for value"; (2) "in good faith"; (3) "without notice of any adverse claim"; (4) "who acquires the security property free of any adverse claim."  12 U.S.C. § 3752(1).  If the purported purchaser is not a bona fide purchaser, then § 3765's claims bar does not apply.  Here, Ms. Robinson's counterclaim to quiet title challenges HUD's status as a bona fide purchaser[1] by attacking the

---

[1] This dispute regarding whether HUD is a bona fide purchaser distinguishes this case

definitional requirement that HUD constitutes "a purchaser for value in good faith."  At this stage of the litigation, we cannot say that Ms. Robinson is bringing a claim against a bona fide purchaser regarding Property sole pursuant to the SFMFA — which would be barred by § 3765 — because whether HUD is a bona fide purchaser remains an open question.  If HUD is not a bona fide purchaser, then nothing in § 3765 precludes Ms. Robinson's quiet title claim.  And HUD has given us no reason to conclude that the presumption that the purchaser of a property under the SFMFA is a bona fide purchaser is irrebuttable.  *See* 12 U.S.C. § 3763(d) ("The purchaser of property under this chapter shall be presumed to be a bona fide purchaser.").  If at a later point we have a sufficient record upon which to determine that HUD is in fact a bona fide purchaser, then HUD could re-raise this issue.  We will not foreclose Ms. Robinson's counterclaim at this juncture.

We also conclude that § 3765 does not bar Ms. Robinson's affirmative defenses of equitable estoppel and unclean hands.  The definition of "bona fide purchaser" at § 3752(1) itself implies that a defense of bad faith would be highly relevant in determining the validity of a purported purchase via an SFMFA nonjudicial sale, given that a "bona fide purchaser" is a purchaser of the property "in good faith."  12 U.S.C. § 3752(1).  Ms. Robinson's affirmative defenses assert bad faith by HUD.  If those defenses prevail, then HUD is not a bona fide purchaser and § 3765's claims bar therefore does not apply.

The text of § 3765 further supports our conclusion that § 3765 does not preclude Ms. Robinson's affirmative defenses.  Section 3765 bars "claims" — it says nothing of barring (and

---

from *Hughes v. Sec'y, United States Dep't of Housing & Urban Dev.*, 578 F. Supp. 3d 234 (D.N.H. 2022) — a case upon which HUD relies, in which it was undisputed that the property at issue was sold to a bona fide purchaser.  *Id.* at 238.

does not even mention) "affirmative defenses" or "defenses."  12 U.S.C. § 3765 (barring "all claims upon, or with respect to, the property sold").  Ms. Robinson's discussion of *F.S.B.* is instructive.  In *F.S.B.*, the Third Circuit addressed a jurisdictional provision contained in the Financial Institution Reform, Recovery, and Enforcement Act (FIRREA) of 1989.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 379 (3d Cir. 1994).  The jurisdictional provision then in-effect deprived the courts of jurisdiction over "any claim or action" regarding certain determinations or actions applicable under the FIRREA.  *Id.* at 383. The Court held that this provision did not strip courts of jurisdiction over affirmative defenses raised by a party defending against a claim, noting that Black's Law Dictionary provides distinct definitions for "claim" and "affirmative defense."  *Id.* at 393-94 (concluding "that a defense or an affirmative defense is neither an 'action' nor a 'claim,' but rather is a response to an action or a claim" based upon the respective definitions in Black's Law Dictionary).  Absent a specific definition for "claim" or "affirmative defense" in the SFMFA, we find *F.S.B.*'s distillation of the difference between these concepts to be persuasive and applicable to § 3765.  This, in combination with the definition of "bona fide purchaser" in § 3752(1), leads us to conclude that § 3765 does not bar Ms. Robinson's affirmative defenses.[2]

**B.      We deny HUD's 12(c) motion because material factual issues remain unresolved and**

---

[2] We are also mindful of the Third Circuit's cautionary note in *F.S.B.* that barring a party who stands to lose property from a lawsuit against them from raising affirmative defenses to such claims would "unconstitutionally deprive[] [them of] their opportunity to be heard" and cause them to "invariably lose on the merits of the claims brought against them[,]" resulting in "[s]uch a serious deprivation of property without due process of law [that] cannot be countenanced in our constitutional system."  *F.S.B.*, 28 F.3d at 394 (footnote omitted).  We need not and will not take such constitutional risk here by prematurely foreclosing Ms. Robinson's affirmative defenses.

**it is not clear that HUD is entitled to judgment in its favor**

HUD is not entitled to judgment as a matter of law at this stage. As explained above, questions of material fact remain: chiefly, whether HUD is a bona fide purchaser of the Property under the SFMFA. The answer to this question is critical to the resolution of this case, and on the record before us, we are not in a position to conclude either way. Accordingly, we deny HUD's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), as HUD has not "clearly establishe[d] that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Wolfington*, 935 F.3d at 195 (citation omitted).

## V.    CONCLUSION

We deny HUD's motion to dismiss under Rule 12(b)(6) because neither Ms. Robinson's counterclaim nor her affirmative defenses are barred by 12 U.S.C. § 3765. Because material questions of fact remain and HUD is not clearly entitled to judgment as a matter of law, we deny HUD's Rule 12(c) motion. An appropriate order accompanies this memorandum.